UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM T. CHASE, *et al.*,          :
                                     :
      Plaintiffs,                   :
                                     :
  v.                                 :   Civil Action No. 03-1683 (JR)
                                     :
AIMCO PROPERTIES, L.P.,              :
                                     :
      Defendant.                    :

### MEMORANDUM

Before the Court in this proposed collective action under the Fair Labor Standards Act, 29 U.S.C. § 216(b), is a motion for court-supervised notice to similarly situated employees and for class certification as to plaintiffs' allegations of Maryland and California state labor law violations.

Defendants AIMCO Properties and NHP Management Company own and operate over 1,500 apartment communities located throughout the country.  The plaintiffs, nine named individuals employed by AIMCO in Maryland, Washington, D.C., New Jersey, and California, seek to represent all "current or former employees of AIMCO and NHP who are or were employed as hourly-paid 'Service Technicians' or 'Maintenance Supervisors' or 'Service Managers,' or in other job titles performing similar duties."  Am. Compl. 4. These workers do maintenance work.  They are required to be "on call," outside normal business hours, in order to respond to

tenant requests for service or repair.  Their "on call" shifts vary in length from location to location, as do the average number of calls per shift and the number of minutes within which they are required to respond.[1]

Plaintiffs' basic claim is that, contrary to the FLSA (and, for those workers in California and Maryland, contrary to the wage and hour laws of those states), they are being required to work overtime hours for which they are not compensated.  They allege that AIMCO's "Adjustable Work Week" policy, which supposedly provides for time off during the same week that extra hours are worked during "on call" shifts, is unlawful as applied because "time off" is not actually allowed.  They further allege that employees are sometimes instructed to record fewer hours on their time sheets than they actually work, and that a headquarters policy not to pay for overtime unless it is authorized in advance has been construed in the field--as it is meant to be construed--to prohibit overtime compensation even for emergency work, which, almost by definition, cannot be approved in advance.  And plaintiffs allege that AIMCO's policy of not

---

[1] The on-call maintenance procedures in AIMCO's employee manual (the Benchmark), Pl. Ex. 14, specifies a 20-minute response time for emergency requests, but in practice the required response times may be shorter or longer.  Def. Mem. in Opp'n 15-16.

paying for on-call "waiting time" when on-call on weekends and after hours is unlawful under FLSA.

The FLSA provides employees with a private right of action and, because individual wage and hour claims might be too small in dollar terms to support a litigation effort, it recognizes a procedural device--a "collective action"--that permits an employee to sue on her own behalf and on behalf of "other employees similarly situated."  29 U.S.C. § 216(b).  A collective action under the FLSA is similar to a class action under Federal Rule of Civil Procedure 23, but there is one important difference.  In an FLSA collective action, "no employee shall be a party plaintiff . . . unless he gives his consent in writing and such consent is filed in the court."  Id.  This opt-in language was added by Congress in order to limit the number and type of plaintiffs who could join collective actions.  See De Asencio v. Tyson Foods Inc., 342 F.3d 301, 305-6 (3d Cir. 2003).

The FLSA also provides for enforcement actions by the Secretary of Labor.  29 U.S.C. § 216(c)).  Between 2001 and 2003, in the exercise of its enforcement authority, the Department of Labor conducted an audit of certain AIMCO properties.  Under DOL's supervision, AIMCO sent surveys to 6,434 maintenance and service technicians.[2]  From the responses received, the Labor

---

[2] The maintenance and service technicians were a sub-set of some 18,000 current and former AIMCO employees to whom survey forms were went.  More than 2,500 survey forms are of record.

Department determined that 795 required further follow-up.  In October 2003 AIMCO settled the FLSA claims of 190 employees.  That settlement terminated DOL's investigation, but the investigation did not encompass the plaintiffs' claim for waiting time (nor would it appear to have preclusive effect as to the claims of any but the 190 employees who settled).

At an initial scheduling conference held on January 16, 2004, I approved initial discovery in anticipation of plaintiffs' motions for notice of a collective action and certification of the proposed Maryland and California class actions.  The discovery conducted under that order has surpassed the "initial" stage by a considerable margin: defendants have deposed all the named plaintiffs, and plaintiffs have deposed three AIMCO witnesses, one of whom was designated under Rule 30(b)(6).  The parties have issued several rounds of written discovery, including requests for admissions, requests for production, and interrogatories, and AIMCO has produced more than 2,500 survey forms from the DOL audit.

The instant motion for notice and class certification relies upon information received in discovery.  The defendants oppose the motion for notice primarily on the grounds that plaintiffs have had enough discovery, that many additional plaintiffs have opted in already, and that the time has come to decide whether or not this is an appropriate collective action.

The question of whether a group of plaintiffs may proceed collectively under the FLSA turns on whether or not they are "similarly situated" to one another. The motion and the opposition present important questions, some of which our Court of Appeals has yet to answer, about how--and when--courts should make the decision whether a group of plaintiffs are similar enough to proceed collectively under § 216(b) and about whether a collective action under FLSA may--or should--proceed alongside a Rule 23 class action.

### The "similarly situated" standard

Courts dealing with collective actions under the FLSA have developed several methods to determine if plaintiffs are similarly situated. Some courts treat a putative FLSA class exactly as they would treat a putative Rule 23 class. See Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001). Other courts have concluded that an FLSA collective action is like the "spurious class action" recognized in the pre-1966 version of Rule 23 (Rule 23(c)), because the Advisory Committee specifically stated that the 1966 amendments to Rule 23 did not apply to FLSA collective actions. In my view, however, neither of those approaches is fully satisfactory. The opt-in requirement of an FLSA collective action and Congress' policy choice to encourage small wage and hour claims to be brought collectively, see Hoffmann-La Roche, Inc. v. Sperling, 493 U.S.

165, 170 (1989), make FLSA collective actions qualitatively different from Rule 23 class actions. See <u>Hunter v. Spring Corp.</u>, 346 F. Supp. 2d 113, 117 (D.D.C. 2004) (FLSA collective actions are not subject to numerosity, commonality, and typicality requirements of class actions under Rule 23); <u>Thiessen</u>, 267 F.3d at 1105 ("Congress clearly chose not to have the Rule 23 standards apply . . . and instead adopted the 'similarly situated' standard.'"); <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1096-7 (11th Cir. 1996).

The so-called ad-hoc approach, <u>see</u> <u>Thiessen</u>, 267 F.3d at 1102-3, has been used by other judges of this court. See <u>Hunter</u>, 346 F. Supp. 2d 113 (D.D.C. 2004) (Bates, J.); <u>Hyman v. First Union Corp.</u>, 982 F. Supp. 1 (D.D.C. 1997) (Lamberth, J.). That approach involves examination of the distinct legal and factual similarities and differences between and among class members' legal claims, though not in reference to the requirements listed under Rule 23. <u>See</u>, <u>e.g.</u>, <u>Lockhart v. Westinghouse Credit Corp.</u>, 879 F.2d 43, 51 (3d Cir. 1989) (considering whether employees worked in same department, division, and location; whether they advanced similar claims; and whether they sought substantially the same form of relief), <u>overruled on other grounds by</u> <u>Starceski v. Westinghouse Elec. Corp.</u>, 54 F.3d 1089, 1099 (3d Cir. 1995); <u>Hyman</u>, 982 F. Supp. at 3-5 (considering alleged activities of the defendant,

similarities of members of the proposed collective action, and extent to which members will rely on common evidence); Lusardi v. Xerox Corp., 122 F.R.D. 463, 465-66 (D.N.J. 1987) (decertifying FLSA class due to class members' disparate factual and employment settings, the defendant's individualized defenses to the plaintiffs' claims, and fairness and procedural considerations). It is difficult to tease any standard for decision out of these so-called ad-hoc decisions, however, and it may simply be that what is "similarly situated" enough for collective action treatment under the FLSA is a matter for the sound discretion of trial courts, guided mostly by Rule 23(b)(3)-like considerations of manageability and efficiency.

### Notice of FLSA collective action

Plaintiffs' motion for court-supervised notice to AIMCO employees invokes the decisions of a number of judges, most recently Judge Bates in Hunter, 346 F. Supp. 2d at 117, to proceed with the certification of FLSA collective actions in two steps.  See Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003).

At the first step, a court conditionally certifies a class and authorizes notice to putative class members upon a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law."  Hoffmann v. Sbarro, Inc., 982 F.

Supp. 249, 261 (S.D.N.Y. 1997).  This determination is ordinarily based mostly on the parties' pleadings and affidavits.  See Cameron-Grant, 347 F.3d at 1243 n.2.  Putative members then have the opportunity to opt in to the representative action for a certain period, see Hunter, 346 F. Supp. 2d at 117, during which period the plaintiffs may engage in discovery to buttress their case that putative class members are similarly situated, and to gather the evidence necessary to meet their burden of proof on the merits when discovery is complete.  Later, and typically upon a defense motion for class decertification, the court proceeds to step two and determines whether the class members are indeed similarly situated.  See id; Thiessen, 996 F. Supp. at 1079; Lusardi, 118 F.R.D. at 361.

In AIMCO's submission, there is no need for a two-step process in this case.  AIMCO points out a) that the plaintiffs have had sixteen months to pursue and convince past and present AIMCO employees to join the collective action and that indeed 46 persons have opted in during that period; b) that the parties have taken extensive discovery, and that the record is complete enough for me to now make a finding as to whether the putative class members are similarly situated; c) that the plaintiffs' overtime claim has already been thoroughly investigated by the Department of Labor; and d) and that allowing the plaintiffs more time and further discovery before proceeding to a final

determination on class certification would be unfair and wasteful of the resources of the parties and of this Court.

   The record as it now stands does not support a collective action on either of plaintiffs' theories.  The first theory, that there is a companywide policy to deny overtime compensation to employees responding to after-hours emergency calls, is supported by anecdotes, a few e-mails from and to supervisors, and an argument about the absence of AIMCO records.  Whether plaintiffs can establish a *prima facie* showing of an FLSA violation by issuing a notice and searching for more anecdotes I cannot say.

   Plaintiffs' second theory, that AIMCO's policy not to compensate employees for on-call waiting time violates the FLSA, has even less record support.  An individual plaintiff may be entitled to recover under the FLSA if she can show that she was "engaged to wait" and not "waiting to be engaged", Skidmore v. Swift & Co., 323 U.S. 134, 137 (1944), but the personal situations that may or may not give rise to liability are so varied that the prospect of finding enough "similarly situated" workers to make a collective action worthwhile appears dim.  The plaintiffs have cited no case in which a waiting time claim was accorded collective action status, and I have found none.  The plaintiffs appear to be arguing that a jury could decide whether one or five or ten calls per week establishes overtime liability

under the FLSA, but I am very doubtful that, at the end of the day, the "similarly situated" requirement for a FLSA action will fit such a case.

Nevertheless I see little prejudice to the defendant from allowing the motion to issue notice.  It may well be that considerations of efficiency and wise use of litigation resources counsel in favor of a one-step determination, but plaintiffs seek only to send notice to putative class members.  The trouble and expense of issuing the notice will primarily be for their account, and the motion for leave to issue notification will be granted.  Even if a collective action is not ultimately certified, the process of allowing individual AIMCO workers to lodge their claims in a forum where they can be recognized, evaluated, and possibly settled, is consistent with the policy choice Congress made when it created the FLSA right of action.  The FLSA class will be conditionally certified.

### Certification of Maryland and California classes

The questions presented by plaintiffs' motion for class certification as to the Maryland and California state law claims are whether I have supplemental jurisdiction of those claims; whether, if I have it, I should assert it; and, if I do have and choose to assert supplemental jurisdiction, whether I should certify the two classes these plaintiffs seek to represent.

Recently, Judge Friedman, following the example of other courts, declined to exercise supplemental jurisdiction over "a opt-out state law class where federal jurisdiction stems only from an opt-in FLSA claim." Lindsay v. Gov't Employees Ins. Co., 355 F. Supp. 2d 119, 121 (D.D.C. 2004).  Judge Friedman's reasoning appears sound to me.  Although no motion to dismiss the state claims is before me, I expect that I will decline to exercise supplemental jurisdiction under 28 U.S.C. 1367(c)(4).[3]  Allowing plaintiffs to proceed with a state-law class action here would confound Congress' design for the collective action and inject unacceptable complexities into the management of the case.  An AIMCO service technician with notice of her right to opt in to the FLSA claim and to opt out of the state class action might reasonably decide not to respond to the notice--but then she would be a party in the class action and not a party in the collective action.  A judgment in the class action might operate to preclude her from pursuing an FLSA claim on her own, a result plainly at odds with Congress's intent to allow workers to preserve FLSA claims by declining to opt in.  The trial of a case involving both FLSA law and the wage and hour laws of California and Maryland, moreover, would presumably emphasize the claims of the California and Maryland plaintiffs who would be asserting

---

[3] The plaintiffs have asserted no basis for this court's jurisdiction over their state-law claims apart from supplemental jurisdiction under 28 U.S.C. § 1367(a).

that AIMCO's "Adjustable Work Week" policy, though perhaps lawful (in theory) under FLSA, operates unlawfully as a matter of state law.  In that scenario, the state claims could well come to predominate over the claims of which I have original jurisdiction, see 28 U.S.C. 1367(c)(3).

* * * * * *

An appropriate order accompanies this memorandum.


JAMES ROBERTSON<br>United States District Judge